AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
District of New Jersey

ORIGINAL FILED
SEP 3 0 2019
WILLIAM T. WALSH, CLERK

United States of America
v.

BRANDON GROCE

*Defendant(s)*

Case No.

Mag. No. 19-mj-5621 (KMW)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of  1/5/19 through 9/11/19  in the county of  Gloucester  in the
_____ District of  New Jersey , the defendant(s) violated:

*Code Section*  *Offense Description*

18 U.S.C. §§ 922(a)(1)(A), 923(a), and 924(a)(1)(D)

SEE ATTCHMENT A.

18 U.S.C. § 922(g)(1)

This criminal complaint is based on these facts:
SEE ATTACHMENT B.

☐ Continued on the attached sheet.

*Complainant's signature*

Joseph S. Daly, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  09/30/2019

*Judge's signature*

City and state:  Camden, New Jersey    Hon. Karen M. Williams, U.S. Magistrate Judge
*Printed name and title*

CONTENTS APPROVED

UNITED STATES ATTORNEY

By: _____
Jeffrey B. Bender, Assistant U.S. Attorney

Date: September 30, 2019

## ATTACHMENT A

### COUNT 1

Between on or about January 5, 2019 through on or about September 11, 2019, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

**BRANDON GROCE,**

not being a licensed dealer under federal firearms law, did willfully engage in the business of dealing in firearms, in violation of Title 18, United States Code, Sections 922(a)(1)(A), 923(a), and 924(a)(1)(D).

### COUNT 2

On or about February 13, 2019, in Gloucester County, in the District of New Jersey, and elsewhere, the defendant,

**BRANDON GROCE,**

knowing that he had previously been convicted in a court of at least one crime punishable by a term of imprisonment exceeding one year, did knowingly possess a Bryco Arms Jennings Nine, 9 mm pistol, bearing serial number 1330505, loaded with ten rounds of ammunition, and the firearm was in and affecting commerce, in violation of Title 18, United States Code, Section 922(g)(1).

1

## ATTACHMENT B

## AFFIDAVIT

1. I, Joseph S. Daly, (the "affiant"), state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (hereinafter, "ATF"). The information set forth in this Affidavit in support of a criminal complaint is based on my personal observations, my training and experience, information obtained from other agents and witnesses, and a review of records and reports. Since this Affidavit is submitted for the sole purpose of establishing probable cause to support the issuance of a complaint, I have not included each and every fact known by the government concerning this investigation. Except as otherwise indicated, the actions, conversations, and statements of others identified in this Affidavit are reported in substance and in part. Similarly, dates and times are approximations, and should be read as on or about, in or about, or at or about the date or time provided.

2. I have been employed as a Special Agent with ATF since 2009. I am currently assigned to the Camden Resident Office of the ATF where I investigate firearms offenses and other violations of federal law. During my employment as an ATF Special Agent, I have personally participated in various types of investigative activity, including, but not limited to, the following: (a) physical surveillance; (b) the debriefing of defendants, witnesses, informants and other individuals who have knowledge concerning violations of federal firearms laws; (c) undercover operations; (d) the execution of search warrants; (e) the consensual monitoring and recording of conversations; and (f) the handling and maintenance of evidence.

## BACKGROUND

3. Between February 2019 and September 2019, an ATF confidential source of information (hereinafter, "CS") purchased seven firearms from Brandon Groce (hereinafter, "the defendant").[1] The CS purchased the firearms during six controlled purchases that law enforcement officers surveilled. All of the purchases occurred at the same location in Gloucester County, New Jersey. An ATF undercover agent accompanied the CS to four of the six controlled purchases.

---

[1] The CS has multiple felony convictions and has narcotics charges currently pending in the State of New Jersey. The CS, however, has cooperated with law enforcement in the past and the information provided by the CS in this investigation and others has proven reliable.

2

4. A query of the ATF National Licensing Center returned on or about May 13, 2019 shows that the defendant has never applied for, nor received, a federal firearms license from the ATF.

5. In addition to the defendant's unlicensed dealing of firearms, the defendant's possession of each firearm was unlawful as a result of his criminal record, which consists of the following New Jersey felony convictions for which he has not received a pardon or restoration of rights:

    a. On or about June 15, 2001, the defendant received a six-year sentence for possession of a firearm for an unlawful purpose.

    b. On or about May 11, 2007, the defendant received a four-year sentence for manufacturing, distributing, or dispensing a controlled substance in November 2006.

    c. On or about May 11, 2007, the defendant received an eighteen-month concurrent sentence for resisting arrest in January 2007.

    d. On or about May 11, 2007, the defendant received a four-year concurrent sentence for possession of a controlled substance in March 2007.

    e. On or about December 22, 2017, the defendant received a one-year sentence for possession of a controlled substance.

## CONTROLLED PURCHASES

6. On or about January 5, 2019, the CS met an individual identifying himself as Brandon. Brandon told the CS that he had a criminal record and was released within the past year from New Jersey state prison.[2] Brandon drove a Ford Taurus sedan with a temporary Delaware license plate XP645007, a photograph of which the CS sent me on or about January 10, 2019.

7. During their conversations on January 5, 2019, Brandon told the CS that he had access to firearms and offered to sell them to the CS. Specifically, Brandon offered to sell the CS a firearm for $450. Later the same

---

[2] The defendant was most recently released from New Jersey state prison on or about August 26, 2018.

3

day, Brandon sent the CS a text message photograph of a Smith and Wesson revolver.[3] This purchase did not occur.

8. On or about January 10, 2019, I showed the CS a photograph of the defendant devoid of any identifiers. CS positively identified the photograph as Brandon, the individual he had met on or about January 5, 2019.

9. Between or about January 22, 2019, and on or about February 12, 2019, the CS and the defendant discussed the possibility of the defendant selling the CS firearms. These conversations took places via numerous text messages and telephone calls, including at least one consensually-recorded call in my presence. The latter portion of this time period included a negotiation between the defendant and the CS to purchase a 9 mm Bryco pistol and a box of ammunition for $550. The purchase price later rose to $600 after the CS offered the defendant an additional $50 to hold the firearm for CS's purchase. During the text and voice conversations during this time period, the defendant indicated several times that he did not presently have the firearms he sought to sell to the CS and was dependent on at least one source to provide the firearms to him.

10. On or about February 13, 2019, the CS made a controlled purchase from the defendant of a Bryco Arms Jennings Nine, 9 mm pistol (serial #1330505) (hereinafter, "Bryco pistol") and fifty rounds of 9 mm Federal ammunition, ten of which were loaded in the pistol magazine, in exchange for $600 in prerecorded funds. Prior to the purchase, I searched CS's person and vehicle to confirm the absence of weapons and contraband. During the purchase, law enforcement conducted surveillance and observed the defendant arrive in a Ford Taurus with the same license plate described in ¶ 6 above. The defendant exited the passenger side of the Ford Taurus, entered the CS's vehicle, handed the CS a white bag containing a shoebox with the firearm and ammunition, took $600 from the CS, and left the CS's vehicle within a few minutes. Prior to the defendant leaving CS's vehicle, they discussed the defendant selling the CS additional firearms. The defendant indicated that the individual presently driving his Ford Taurus would be able to purchase a 0.45 caliber ACP pistol at a store for $400 and that the defendant would then resell

---

[3] The defendant used the same telephone number (609-943-0114) for all of the messages and phone calls described in this Affidavit. I have retained copies of text messages sent between the defendant and the CS and have retained the recordings of any recorded telephone calls.

4

the pistol to the CS for $550.[4] The transaction, which was audio and video recorded, occurred at a gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in his vehicle to another location where I retrieved the firearm, ammunition, shoebox, bag, and recording devices described in this paragraph.

11. Between or about February 20, 2019, and on or about February 26, 2019, the CS and the defendant negotiated the sale of additional firearms. During their conversations, the defendant initially agreed to sell a Glock firearm and Smith and Wesson revolver to the CS for $1,350. The defendant later claimed that he no longer could sell the revolver but would sell the Glock to the CS for $800.

12. On or about February 28, 2019, the CS made a controlled purchase from the defendant of a Glock model 17, 9 mm pistol (serial #VRA488) and fifteen rounds of 9 mm Speer ammunition, which was loaded in the pistol magazine, in exchange for $800 in prerecorded funds. Prior to the purchase, I searched CS's person and vehicle to confirm the absence of weapons and contraband. During the purchase, law enforcement conducted surveillance and observed the defendant arrive in a rented Kia Optima. The defendant exited the passenger side of the Optima, entered the CS's vehicle, handed the CS a Nike bag and Nike box containing the firearm, took $800 from the CS, and left the CS's vehicle within a few minutes. The transaction, which was audio and video recorded, occurred at the same gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in his vehicle to another location where I retrieved the firearm, ammunition, box, bag, and recording devices described in this paragraph.

13. During approximately March 2019 through May 2019, the CS and the defendant discussed additional firearm purchases. On or about May 2, 2019, the defendant offered to sell a Ruger revolver to the CS for $500. The CS offered an additional $50 for the defendant to hold the firearm for the CS to purchase on May 6, 2019, and the defendant agreed.

14. On or about May 6, 2019, the CS made a controlled purchase from the defendant of a Ruger model Super Red Hawk, .44 caliber revolver (serial #550-47664) and six rounds of .44 caliber Remington ammunition, which was loaded in the revolver, in exchange for $550 in prerecorded funds. Prior to the purchase, I searched CS's person to confirm the absence of weapons and contraband. An ATF undercover agent drove the CS to the purchase in an ATF vehicle. During the purchase, law enforcement conducted surveillance and

---

[4] The defendant's statements show that he knows he would not be permitted to purchase firearms from a store himself and that he earns a profit in selling the firearms to the CS.

observed the defendant arrive in a Dodge Durango. The CS entered the front passenger seat of the Durango, the defendant (sitting in the back seat with two young children) handed the CS a Star Wars backpack containing the firearm, the defendant took $550 from the CS, and the CS left the Durango soon thereafter. Agents observed the CS exiting the Durango with a bag that he did not have when he entered the Durango. The transaction, which was audio and video recorded, occurred at the same gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in the ATF vehicle to another location where I retrieved the firearm, ammunition, backpack, and recording devices described in this paragraph.

15. During approximately May 2019 through August 2019, the CS and the defendant discussed additional firearm purchases. On or about August 1, 2019, the defendant offered to sell a .357 revolver to the CS for $600. The defendant claimed that he had another potential buyer for the firearm and required an additional $100 to hold the firearm for CS to purchase on August 5, 2019. The CS agreed.

16. On or about August 5, 2019, the CS made a controlled purchase from the defendant of a Smith and Wesson model 60-14, .357 caliber revolver (serial #CJR 6232) and five rounds of .357 caliber Federal ammunition, which was loaded in the revolver, in exchange for $700 in prerecorded funds. Prior to the purchase, two agents, including the ATF undercover agent, searched CS's person to confirm the absence of weapons and contraband. An ATF undercover agent drove the CS to the purchase in an ATF vehicle. During the purchase, law enforcement conducted surveillance and observed the defendant arrive in a Cadillac, exit the Cadillac, retrieve a brown paper bag from the Cadillac's trunk, and reenter the Cadillac. The CS and undercover agent then arrived, the defendant left the Cadillac, approached the ATF vehicle, returned to and reentered the Cadillac with the CS, handed the CS the brown paper bag containing the firearm, and took $700 from the CS. The CS left the Cadillac soon thereafter. Agents observed the CS outside the Cadillac with the brown paper bag that he did not have when he entered the Cadillac. The transaction, which was audio and video recorded, occurred at the same gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in the ATF vehicle to another location where another agent retrieved the firearm, ammunition, bag, and recording devices described in this paragraph.

17. Between on or about August 9, 2019 through on or about August 11, 2019, the defendant offered to sell multiple additional firearms to the CS, and they ultimately agreed to exchange one 9 mm pistol for $800 on August 12, 2019.

18. On or about August 12, 2019, the CS made a controlled purchase from the defendant of a Smith and Wesson model SD9VE, 9 mm pistol (serial

6

#FXU0972) and fifteen rounds of 9 mm CCI ammunition in exchange for $800 in prerecorded funds. Prior to the purchase, I searched CS's person to confirm the absence of weapons and contraband. An ATF undercover agent drove the CS to the purchase in an ATF vehicle. During the purchase, law enforcement conducted surveillance and observed the defendant arrive in a RAV 4. The defendant exited the RAV 4 holding a black plastic bag and handed the CS the bag before they both entered the RAV 4. The CS confirmed that the bag contained the firearm inside a Nike box, gave the defendant $800, and exited the RAV 4 soon thereafter. Agents observed the CS outside the RAV 4 with the black plastic bag. The transaction, which was audio and video recorded, occurred at the same gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in the ATF vehicle to another location where another agent and I retrieved the firearm, ammunition, bag, and recording devices described in this paragraph.

19. The Smith and Wesson 9 mm pistol sold by defendant on or about August 12, 2019 was originally purchased at a licensed federal firearms dealer in West Virginia on or about June 22, 2019. In my training and experience, the short time that elapsed from the moment the firearm was purchased in the State of West Virginia to the time of recovery in New Jersey is indicative of firearms trafficking. In addition, the current manufactured suggested retail price of the firearm is $389. That the defendant sold the firearm to the CS for approximately twice the retail price of the firearm is also indicative of firearms trafficking.

20. Between on or about September 2, 2019 through on or about September 10, 2019, the defendant and the CS negotiated the sale of a sixth and seventh firearm from the defendant to the CS.

21. On or about September 11, 2019, the CS made a controlled purchase from the defendant of (1) a GSG model GSG-522, .22 caliber rifle (serial #A400543); (2) a Kel-Tec model P3AT, .380 caliber pistol with an obliterated serial number; and (3) magazines and ammunition for both firearms, all in exchange for $1,300 in prerecorded funds. Prior to the purchase, I searched CS's person to confirm the absence of weapons and contraband. An ATF undercover agent drove the CS to the purchase in an ATF vehicle. During the purchase, law enforcement conducted surveillance and observed the defendant arrive in a Ford Fusion. The defendant exited the Fusion, opened and shut its trunk, entered the ATF vehicle holding two white trash bags, provided the above-described items to the CS, took $1,300 from the CS, and exited the ATF vehicle after engaging in a conversation with the CS and ATF undercover agent. The video recording shows the defendant handing one white trash bag over the middle console of the ATF vehicle to the CS and the ATF undercover agent observing the CS retrieve the GSG-522 firearm from the bag. (The video does not clearly show the CS actually retrieving the firearm

from the white trash bag.) The video recording also shows the defendant sliding across the middle console a magazine and box of ammunition that he took off his person. The video recording further shows the defendant opening the second white trash bag, retrieving two magazines and the Kel-Tec firearm from the bag, and passing the items to the CS. The transaction, which was audio and video recorded, occurred at the same gas station parking lot in Paulsboro, New Jersey. After the transaction concluded, agents followed the CS in the ATF vehicle to another location where another agent and I retrieved the firearms, ammunition, magazines, bags, and recording devices described in this paragraph.

22. While the defendant was engaging in conversation inside the ATF vehicle during the September 11, 2019 controlled purchase, the defendant stated, in part, "I be cashing checks too . . . you give me some bands, I'll drop something for you." In my training and experience, I understand that the defendant was offering to kill somebody in exchange for money.

### **POSSESSION OF A FIREARM BY A FELON**

23. None of the firearms discussed in this Affidavit have been manufactured in the State of New Jersey. Therefore, all of them crossed interstate boundaries prior to the defendant selling the firearms in New Jersey to the CS. Specifically, the Bryco pistol, see ¶ 10, was manufactured in California. According to the ATF's National Tracing Center, the Bryco pistol was previously purchased from a dealer in Pennsylvania.

24. Evaluation of the Bryco pistol by a technician with the Camden County Police Department Firearms Identification Unit showed that the Bryco pistol was operable and capable of being discharged.

8